**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH A HUNT, | CASE NO. 1:25-CV-01022-DCN |
| Plaintiff, | JUDGE DONALD C. NUGENT<br>UNITED STATES DISTRICT JUDGE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, Elizabeth A. Hunt ("Hunt" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On March 4, 2022, Hunt filed an application for DIB, alleging a disability onset date of March 4, 2022. (ECF No. 9, PageID #: 129). The application was denied initially and upon reconsideration, and Hunt requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On March 6, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 79-104). On May 17, 2024, the ALJ issued a written decision finding Hunt was not disabled. (*Id.* at PageID #: 129-43). The ALJ's

1

decision became final on March 21, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 66-68).

On May 19, 2025, Hunt filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 14, 15). Hunt asserts the following assignments of error:

> (1) The ALJ found at step four that Plaintiff was able to perform her past relevant work. This finding is unsupported by substantial evidence because her past work as a cashier at Lowes Home Improvement was performed with accommodations, and the vocational expert found that Plaintiff could not perform the position as generally performed in the national economy.
>
> (2) The ALJ found at step four that Plaintiff had the residual functional capacity to perform a range of light work. The finding is unsupported by substantial evidence because the ALJ failed to evaluate the medical opinions and prior administrative medical findings pursuant to the regulations.

(ECF No. 11 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Hunt's hearing:

> The claimant premised her claim for disability on degenerative disc in lower back, lost vision in the left eye, anxiety, and trigger finger (2E/2). In a Function Report, from April 2022, she reported that her medical condition(s) affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, and to use her hands (3E/6). As for her physical limitations, she indicated that she could only walk for one hundred yards before needing to stop and rest. She stated that she could resume walking after resting for ten to thirty minutes. As for activities of daily living, she reported that she had difficulty performing personal care activities, such as dressing and bathing (3E/2). She said she prepares her own meals, such as frozen food and crockpot food (3E/3). She also said that she performs some light household chores, such as cleaning laundry, sweeping, and washing dishes.

2

> At the hearing, the claimant testified that she suffers from herniated disc in her lower back, left eye visual impairment, and anxiety (Hearing Testimony). As far as physical limitations, the claimant testified that she could sit for fifteen minutes, stand for half of an hour, and walk for an hour. She said she could only lift twenty pounds. As for activities of daily living, she reported that she was able to clean and do laundry. She reported that she was able to dress and shower herself. She said that she was able to cook and prepare food for herself, such as yogurt, peanut butter sandwiches, string cheese, cereal, and microwave meals. She stated that she was able to volunteer at her church working at a store, straightening up merchandise. She indicated that she was allowed to sit in chairs when needed. She said that she is attempting to go on mission for her church to an orphanage in Kenya. She indicated that she would be helping teach English.

(ECF No. 9, PageID #: 136).

### B. Relevant Medical Evidence

The ALJ also summarized Hunt's health records and symptoms:

> In March 2020, an MRI of the lower back showed evidence of moderate to severe foraminal stenosis at L5-S1, some anterolisthesis, and disc bulge (5F/5). In April 2022, she weighed 255 pounds for a BMI of 42.43 (2F/72). She had a left eye patch. Otherwise, he had normal findings on physical examination. In August 2022, she weighed 253 pounds for a BMI of 42.15 (8F/27). On physical examination, she had normal range of motion in the cervical back (8F/28).
>
> As part of his claim for disability, she presented to Karolis Bauza, M.D., for a medical consultative examination in June 2022 (5F). On physical examination, her gait was unsteady (5F/4-5). Her back was tender to palpation. There was no joint swelling or effusion, erythema or deformity. She was able to lift, carry, and handle light objects. Her fine and gross manipulative abilities were grossly normal. She was able to squat and rise from that position with moderate difficulty. She was able to rise from a sitting position without assistance and could get up and down from the exam table with ease. She had moderate difficulty walking on heels and toes. Her tandem walking was abnormal and unsteady, and the claimant could stand but not hop on one foot bilaterally. X-rays of the right knee did not any show evidence of acute osseous abnormality (12F/39).

3

By June 2023, a physical examination revealed normal medical findings, including a normal gait with no motor weakness or edema (16F/14). In September 2023, a physical examination revealed normal medical findings (22F/58). In November 2023, a physical examination revealed mild to moderate muscle spasm, tenderness, and fixation in the low back (21F/1). Her ranges of motion of the lumbar were restricted and painful. In December 2023, a physical examination revealed normal medical findings (22F/25). …

Regarding claimant's vision impairments, during the consultative exam, claimant reported loss of vision in her left eye since cataract surgery in 2019 (5F). On exam, she had 20/50 visual acuity in her right eye with corrective lenses, but claimed she could not see the eye chart with her left eye. Id. The examiner noted "no response to confrontation on the left" Id. A few weeks earlier, on June 7, 2022, she attended an exam at the Retina Group to follow up on hypotony maculopathy, and retina detachment with single break (4F/1). She reported no changes since her last visit in December 2021. Id. She reported eye pain "when touched", ocular redness, and light sensitivity. Id. On exam, she had 20/40 vision OD and DccHM @3ft OS. Id. The doctor diagnosed hypotony maculopathy, IOP remains low despite STTA, vision stable, would not recommend additional treatment; retinal detachment with single break OS, retina remains stable and fully reattached; resolved total retinal detachment OA; resolved acute endophthalmitis OA; and pseudophakia OU, good post-operative appearance. Id. at 2. In September 2022, she reported some blurred vision after a long day at work and wearing a patch to focus better (18F/1). She had 20/25 vision OD and DscHM OS. Id. In June 2023, she reported her vision was stable and no blurred vision (19F/1). She testified she could see with her right eye well if wearing her glasses, but sometimes up close she required a magnifier and light table. Although she told the psychological consultative examiner she could no longer read a book because she could not focus with her one bad eye, she testified to reading her Bible and participating in Bible study daily and plans to go on a mission trip to help children learn to read English. She continues to drive, mostly in daytime hours. She participates in crafts such as scrapbooking and diamond art, which involves putting tiny gems into designated spaces to create a picture (think: paint-by-numbers with gems). She performs a seasonal job at Shutterfly 20-32 hours per week, which consists of opening mail and separating cash from check (Hearing Testimony). She began by working 32 hours per week in September 2022, but then dropped down to 20 hours per

4

> week in October. Although she did complain to her doctor about some blurry vision after a long day in September 2022, in October, she told her doctor she was experiencing exhaustion after a long day of work and possibly some depression, leading to laundry and household chores to go unfinished (12F/53). She also reported some additional back pain. *Id.* On October 18, 2022, she indicated she wanted to reduce her hours from 8 hours per day to 5 hours per day. She stated, [t]his will allow me a chance to catch up at home and free up time for me to seek out someone to talk with" (22F/174). Despite claimant's having essentially monocular vision she has been able to adapt quite well, she still does crafts that requires seeing very small objects and requiring acute vision, does work and other activities requiring reading relatively small type (such as typeface in a Bible and reading mail), she continues to drive, and perform daily activities of daily living.

(ECF No. 9, Page ID #: 137-38).

### C. Opinion Evidence at Issue

In crafting Plaintiff's RFC, the ALJ relied on opinions from the State agency consultants; consultative examiner Dr. Karolis Bauza; Plaintiff's physical therapist, Thomas Parkhurst; psychologist Dr. James Tanley; Plaintiff's treating physician, Dr. Nancy Mathieu; and chiropractor Dr. Jeff Zaika. (ECF No. 9, PageID #: 139-41). The ALJ's discussion of the relevant opinions is set forth in greater detail below with respect to Plaintiff's arguments.

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since March 4, 2022, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the knee, obesity, and vision impairment (20 CFR 404.1520(c)).

5

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently sit, stand frequently, and walk occasionally. She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can occasionally stoop and bend. She can frequently crouch and occasionally kneel.

6. The claimant is capable of performing past relevant work as a Cashier II (DOT 211.462-010), Sales Attendant (DOT 299.677-010), and Hospital Admitting Clerk (DOT 205.362-018). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2022, through the date of this decision (20 CFR 404.1520(f)).

(ECF No. 9, PageID #: 131-32, 134-35, 142

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

6

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

Hunt raises two issues on appeal, challenging (1) the ALJ's finding that she could perform her past relevant work and (2) the ALJ's consideration of two medical opinions in forming the RFC. (ECF No. 11 at 1).

### 1. Ability to Perform Past Relevant Work

Plaintiff first challenges the ALJ's determination that she could perform her past relevant work as a cashier, sales attendant, and hospital admitting clerk. (ECF No. 11 at 14). Plaintiff argues that because her claim was still pending with the Appeals Council as of June 22, 2024, her claim is subject to Social Security Ruling ("SSR") 24-2p such that her only past relevant work was as a cashier. (*Id.*). Further, Plaintiff argues that in her cashier position, she required an accommodation from her employer but "the ALJ did not consider whether this position was performed with accommodations, and the ALJ did not indicate the ability to sit or stand as needed was not an accommodation." (*Id.* at 15). Plaintiff argues this error was not harmless since she was unable to "perform her past relevant work as generally performed or as performed without accommodations, and the step four finding would be unsupported by substantial evidence." (*Id.* at 16).

The Commissioner responds that "Plaintiff has not shown that her alleged sit/stand option satisfies a 'special condition' as outlined in 20 C.F.R. § 404.1573(c)." (ECF No. 14 at 12). Further, the Commissioner argues Plaintiff failed to point to any evidence beyond her own testimony to support that she needed a medical accommodation. (*Id.* at 13). To the extent Plaintiff relies on SSR 24-2p, the Commissioner argues the new rule would have no bearing on the ALJ's step four finding because the cashier job was performed within the past five years and the ability to perform even one previous job would support the nondisability finding. (*Id.* at 12

8

n.4).

At step four of the sequential evaluation, an ALJ must determine whether a claimant can perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). When Hunt filed her initial claim and when the ALJ issued her decision, past relevant work was defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1) (2012). However, effective June 22, 2024, the definition was changed to only include work that was performed in the last five years. 20 C.F.R. § 404.1560(b)(1) (2024). Under the regulations, if a claimant maintains the RFC to perform her past relevant work, she is not disabled and additional factors, including the claimant's vocational factors of age, education, and work experience or whether the past relevant work exists in significant numbers in the national economy, are irrelevant. 20 C.F.R. § 404.1560(b)(3).

Here, the ALJ found that Hunt retained the RFC to perform light work except "she can frequently sit, stand frequently, and walk occasionally. She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can occasionally stoop and bend. She can frequently crouch and occasionally kneel." (ECF No. 9 at PageID #: 135). The ALJ made the following finding concerning Plaintiff's ability to work:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform her work as a Hospital Admitting Clerk (DOT 205.362-018), both as actually performed by the claimant, and as generally performed in the national economy. The claimant can perform her work as a Sales Attendant (DOT 299.677- 010), only as it is generally performed in the national economy, as claimant performed such work at a medium level. She can perform the work as Cashier II (DOT 211.462-010), only as she actually performed it, as per her testimony, for the most part, she could sit and stand as needed.

9

(ECF No. 9, PageID #: 142).

Based on the ALJ's findings, the Court need not conclusively resolve whether the new five-year definition of past relevant work applies to Hunt's claims because even if the Court were to disregard the hospital admitting clerk and sales attendant positions, Hunt does not contest that she performed the cashier position in the past five years. Rather, citing 20 C.F.R. § 404.1573(c), she argues that the ALJ did not properly consider whether this position required an accommodation such that it might not constitute substantial gainful activity. This provision addresses consideration of work done under special conditions, explaining that when work is done under special conditions, an ALJ "may find that it does not show that you have the ability to do substantial gainful activity." 20 C.F.R. § 404.1573(c). "However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 4014.1573(c). Thus, an ALJ is required to consider any special conditions but is not required to find that the presence of special conditions means that a claimant's work does not amount to substantial gainful activity.

Here, by finding that Plaintiff's cashier position was past relevant work, the ALJ implicitly found that it amounted to substantial gainful activity. *See* 20 C.F.R. § 404.1560(b)(1) (definition of past relevant work requires that the work amounted to substantial gainful activity). The ALJ's discussion—which specifically references Plaintiff's ability to sit and stand as needed—indicates that she considered any special conditions and concluded even with these special conditions, Plaintiff's position still amounted to substantial gainful activity. This conclusion is consistent with 20 C.F.R. § 404.1573(c), which specifically allows an ALJ to find that work done under special conditions is still substantial gainful activity. Further, while the special conditions were not included in the RFC, the ALJ found that Plaintiff could perform her

10

past relevant work as a cashier only as actually performed or, in other words, with the ability to sit and stand as needed. (ECF No. 9, PageID #: 143).

Overall, any error by considering Hunt's past work beyond the new five-year timeframe was harmless because the ALJ found that Plaintiff retained the RFC to perform her prior work as a cashier as actually performed, which included the ability to sit and stand as needed. *See Hernandez v. Astrue*, 277 F. App'x 617, 625 (7th Cir. 2008) (ALJ's decision that plaintiff was not disabled because she could perform her past relevant work as actually performed was supported by substantial evidence where the ALJ relied on vocational expert testimony that considered previous limitations on standing). Thus, Plaintiff's first argument fails.

### 2. Consideration of Medical Opinions

Plaintiff next argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of Dr. Matheiu and Dr. Zaika. (ECF No. 11 at 17-22).

Before proceeding to step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c). The ALJ is required to explain how she considered the supportability

11

and consistency of a source's medical opinion, but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2).

### a. Dr. Matheiu

The ALJ provided the following explanation of how she considered Dr. Matheiu's opinion:

> I have considered the opinion of Nancy Mathieu, M.D., one of the claimant's treating physicians who completed a "work note" in October 2022 (13F). Dr. Mathieu found that the claimant should reduce work hours to twenty hours per week. I find that this opinion is unpersuasive because it contains no function-by-function limitations. This opinion is conclusory with little to no probative value, as no support or explanation is given. While Dr. Mathieu wrote this note with at claimant's request, no evidence suggest claimant could not work more than 20 hours per week with some limitations.

(ECF No. 9, PageID #: 141).

Plaintiff argues that "the ALJ failed to compare this opinion to any portion of the record, and Dr. Matheiu's treatment notes explain the basis of the opinion. (ECF No. 11 at 19). Specifically, Plaintiff points to an October 17, 2022 treatment note as supporting the opinion. (*Id.* at 20). Additionally, Plaintiff argues that "Dr. Matheiu was available to clarify the reasons why Plaintiff was limited to 20 hours of work per week if it was not clear, and the ALJ did not seek clarification of the opinion," such that rejection of the opinion was improper. (*Id.* at 21).

The Commissioner responds that the ALJ properly found the opinion unpersuasive because it contained no function-by-function limitations; was conclusory and did not include support or explanation; and "there was no evidence to suggest she could not work more than 20 hours per week with some limitations." (ECF No. 14 at 6-7). The Commissioner argues the ALJ considered Dr. Mathieu's notes in reaching her decision. (*Id.* at 7). Further, the Commissioner argues Dr. Matheiu's opinion addressed an issue that was reserved to the Commissioner such that the ALJ was not required to consider it at all. (*Id.* at 8).

In reply, Plaintiff again asserts that the ALJ did not compare Dr. Matheiu's opinion with the October 17, 2022 treatment note and argues the ALJ's review of the evidence supports Dr. Matheiu's opinion. (ECF No. 15 at 1-2). Additionally, Plaintiff argues the ALJ did not reject the opinion as addressing an issue reserved to the Commissioner such that this is an improper *post hoc* argument. (*Id.* at 2-3).

The Commissioner's argument is persuasive, and the undersigned agrees that the ALJ considered Dr. Matheiu's opinion in accordance with the regulations. The ALJ's discussion makes clear that she found Dr. Matheiu's opinion that Plaintiff should reduce her work hours unpersuasive because it was conclusory and failed to provide support or explanation for the conclusion. (ECF No. 9, PageID #: 141, 697). This is sufficient articulation of how the ALJ considered the supportability factor. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence *and supporting explanations* presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be.") (emphasis added). While Plaintiff highlights notes from a single visit with Dr. Matheiu that she asserts support the opined limitation, Dr. Matheiu did not cite any of Plaintiff's conditions, subjective complaints, or medical findings as supporting her opinion. (*Id.* at PageID #: 697).

13

Nor at any point in these notes did Dr. Matheiu make any finding that Plaintiff would benefit from working reduced hours. (*Id.* at PageID #: 673-96). Critically, as indicated by the ALJ, Dr. Matheiu issued the opinion at Plaintiff's specific request to lower her work hours. (*Id.* at PageID #: 956). The ALJ also considered consistency when she noted that "no evidence" suggested that Plaintiff could not work more than 20 hours per week with the limitations included in the RFC. (*Id.* at PageID #: 141).

Even if the Court were to conclude that the ALJ erred in her consideration of the consistency and supportability factors, any such error was harmless. The opinion—in its entirety—states: "It is my medical opinion that Elizabeth Hunt should reduce work hours to 20 hours per week until further notice. If you have any questions or concerns, please don't hesitate to call." (ECF No. 9, PageID #: 697). However, this "is the kind of vague and unhelpful opinion that is patently deficient and could not have been credited by the Commissioner." *Dollinger v. Comm'r of Soc. Sec.*, No. No. 22-3359, 2023 WL 1777386, at *4 (6th Cir. 2023) (finding any error by ALJ in consideration of opinion that failed to include medical findings to support the opinion was harmless) (collecting cases).

   b. **Dr. Zaika**

The ALJ provided the following explanation regarding her consideration of Dr. Zaika's opinion:

> I have considered the opinion of Jeff Zaika, DC, one of the claimant's treating chiropractors who completed a medical source statement in October 2022 (13F). This chiropractor indicated that the claimant was not advised to perform heavy manual labor but could perform seated or light duty jobs without issue. The opinion has little persuasive value because the doctor provides no support or explanation for his given limitations. An opinion without explanation or reference to the medical evidence on which such an opinion is based, has little value when crafting an RFC. I cannot infer or guess on the reasons for a source's opinion, or on which

14

> evidence the source relied. While I may ultimately agree with the conclusions of the examiner, limitations without support or explanation have little persuasive value in my assessment of the claimant's abilities. Moreover, it is not clear whether the doctor's reference to heavy and light jobs corresponds to the DOT definitions of such terms.

(ECF No. 9, PageID #: 141).

Contrary to the ALJ's explanation, Plaintiff argues "Dr. Zaika did provide explanations for the limitations and included objective findings supporting his opinion." (ECF No. 10 at 21). Additionally, Plaintiff argues Dr. Zaika's opinion is consistent with the treatment notes in the record. (*Id.*). She argues "[t]he errors are not harmless given that Plaintiff's past work would be eliminated if Plaintiff was limited to sedentary work." (*Id.*).

In response, the Commissioner acknowledges that Dr. Zaika listed clinical findings from his treatment records to support his opinion but argues that "any error the ALJ made by noting the lack of support for the opinion, was harmless because the RFC was consistent with Chiropractor Zaika's opinion." (ECF No. 14 at 10). Specifically, the Commissioner argues that Dr. Zaika "advised against heavy manual labor and stated that Plaintiff could perform seated or lite duty jobs without issue" and, consistent with Dr. Zaika's opinion, the RFC adopted included "no heavy manual labor" and a limited range of light work. (*Id.*). Further, the Commissioner argues the ALJ considered the clinical findings referenced in the opinion but also cited other examinations showing normal findings and accommodated Plaintiff's limitations (and Dr. Zaika's opinion) by limiting Plaintiff to a reduced range of light work. (*Id.* at 10-11).

Plaintiff replies that "Dr. Zaika did not specify any limitations other than limiting Plaintiff to a seated job, and it is improper to speculate that Dr. Zaika intended to limit Plaintiff to the full range of light work, which 'requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'" (ECF No. 15 at 3-4). Additionally, Plaintiff

15

argues the ALJ's summation of the evidence is insufficient to explain the ALJ's consistency finding because the summation contained multiple abnormal findings. (*Id.* at 5).

Here, there can be no genuine dispute that the ALJ erred in finding Dr. Zaika provided "no support or explanation for his given limitations." (ECF No. 9, PageID #: 141). Contrary to this finding and as the Commissioner concedes, Dr. Zaika specifically cited MRI findings of "grade I anterolisthesis L3-4 with disc bulge/protrusion, L4-5-S1 disc bulge" and examination findings including muscle spasm, tenderness, and fixation in the low back; low back pain in response to multiple tests; and restricted and painful lumbar range of motion. (*Id.* at PageID #: 698). Compounding the issue, the ALJ's discussion—which focuses on the lack explanation or reference to medical evidence—does not provide any discussion of the opinion's consistency except to note that the ALJ "may ultimately agree with the conclusions of the examiner." (*Id.* at PageID #: 141). Thus, the ALJ erred, and the question becomes whether these errors require reversal.

While "[t]he Sixth Circuit has not yet addressed if or when an ALJ's failure to properly analyze a medical opinion for supportability and consistency under the revised § 404.1520c(b)(2) can be excused as harmless error," "[c]ourts in this district … have applied the harmless error standard when evaluating an ALJ's treatment of an expert medical opinion for applications after the revision." *Hamm v. Comm'r of Soc. Sec.*, No. 1:25-cv-00423, 2025 WL 3687383, at *6 (N.D. Ohio Dec. 19, 2025) (collecting cases). Failure to consider an opinion in accordance with the regulations is harmless error "if the ALJ adopted the opinion or made findings consistent with the opinion" or if the opinion is so patently deficient that the Commissioner could not possibly credit it. *Id.*

The undersigned agrees with the Commissioner that the ALJ's error was harmless

16

because the ALJ made findings consistent with the opinion. Although the opinion referenced "heavy manual labor" and "seated or lite jobs," the ALJ explained that it was unclear whether these references corresponded to the definitions of these terms under the regulations. (ECF No. 9, PageID #: 141). While the opinion indicated seated or lite jobs could be performed "without issue," an RFC "is the most [a claimant] can still do despite [her] limitations," not what the claimant could best do. 20 C.F.R. § 404.1545(a)(1). Nothing in the opinion indicates that Plaintiff could *only* perform "seated or lite jobs" or that Plaintiff would be unable to perform any work that required standing. (ECF No. 9, PageID #: 698). At best, the only *limitation* included in the opinion was that heavy manual labor was not advised. (*Id.* at PageID #: 698). Consistent with this conclusion, the ALJ limited Plaintiff to light work, which by definition "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Because the ALJ ultimately made findings consistent with the only limitation in Dr. Zaika's opinion, any error in her consideration of the opinion was harmless and does not warrant reversal.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Hunt's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 12, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).